**UNITED STATES of America,**

v.

**John VERRA, Anthony Verra, Fred Ponder, and John Doe, a male, Negro, approximately 5′ 8″ tall, weighing about 170 lbs. and approximately 45 years of age, Defendants.**

United States District Court
S. D. New York.
Feb. 23, 1962.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, for the United States. Daniel P. Hollman, Asst. U. S. Atty., New York City, of counsel.

Daniel H. Greenberg, New York City, for defendants John Verra and Anthony Verra.

WEINFELD, District Judge.

The various motions made by the defendants John Verra and Anthony Verra are disposed of as follows:

I. MOTION FOR AN ORDER PURSUANT TO RULE 7(d) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE, 18 U.S.C.A., STRIKING PARAGRAPHS 3H, 3I, 3J AND 3K FROM THE FIRST COUNT OF THE INDICTMENT

The first count of the indictment charges the movants, John Verra and Anthony Verra, and others with conspiracy to obstruct the due administration of justice in the United States District Court for the Southern District of New York. The proceedings with respect to which the defendants' alleged illegal conduct was directed were a grand jury investigation and the trial of the defendants named in the indictment returned by that grand jury. The grand jury commenced its inquiry on October 3,

1960 and the trial was had from October 10, 1961 to October 25, 1961. The means by which it is alleged that the conspiracy to obstruct justice would be carried out are set forth in paragraphs 4A through 4H. Paragraph 4H contains the only reference to conduct subsequent to the trial; it charges that on the 8th day of November, 1961 Anthony Verra assaulted Prentiss James, who had been a witness at the trial.

Clearly, as to those obstructive acts committed between the start of the grand jury investigation and the conclusion of the trial, the conviction of the defendant John Verra and others, the sentence imposed, the appeal from the judgment and the order by the Court of Appeals that the appeal be argued by February 1962 (the items sought to be stricken) are not relevant. That the trial resulted in a conviction is not germane to a charge of corrupt obstruction of the administration of justice under section 1503 of Title 18.[1] Guilt is incurred by the trial; success or failure is not an element of the charge.[2] The Government, however, seeks to retain the allegations in the indictment, urging that to constitute an offense, the wrongful act must be in respect to a proceeding pending in the federal courts.[3] However, the grand jury investigation and the trial upon the indictment satisfy this element; they were proceedings pending in the United States District Court and did not lose their character, whatever the jury's verdict.

■ Similarly, the fact that the assault as alleged in paragraph 4H of the indictment occurred several weeks after the jury returned its verdict does not justify retention of the challenged allegations. Section 1503 is of broad sweep and condemns different categories of illicit conduct aimed at, and intended to interfere with, the due administration of justice.[4] Among other matters, it condemns injurious acts upon a witness whether committed before, during or after a trial.[5] The statute makes it an offense when one "injures any * * * witness in his person or property * * on account of his testifying or *having testified* to any matter pending [in any court of the United States] * * *." (Emphasis added.)

■ Thus, under the indictment in the instant case, James' appearance as a witness at the trial and the assault upon him by reason thereof are material to the charge. That John Verra was found guilty, was sentenced and the conviction appealed is immaterial. These matters are not ingredients of the offense, nor essential elements thereof. Of course, if the essence of the corrupt conduct related to a conviction or the sentence to be imposed following conviction, a different situation would exist.[6] Such is not the charge here.

■ John Verra's conviction, if permitted to remain in the indictment, could not properly be brought to the jury's attention at the start of the trial, and if the prosecutor, in his opening statement to the jury, were to read or refer to this allegation, a mistrial would result.[7] Nor could the conviction against John Verra be established in the Gov-

1. Cf. Catrino v. United States, 176 F.2d 884 (9th Cir. 1949).

2. Cf. United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 65 L.Ed. 553 (1921).

3. See Pettibone v. United States, 148 U.S. 197, 207, 13 S.Ct. 542, 37 L.Ed. 419 (1893); United States v. Perlstein, 126 F.2d 789, 794 (3d Cir. 1942).

4. United States v. Solow, 138 F.Supp. 812 (S.D.N.Y.1956).

5. Cf. Odom v. United States, 116 F.2d 996, 998 (5th Cir.), rev'd on other grounds, 313 U.S. 544, 61 S.Ct. 957, 85 L.Ed. 1511 (1941).

6. See United States v. Polakoff, 121 F.2d 333 (2d Cir.), cert. denied, 314 U.S. 626, 62 S.Ct. 107, 86 L.Ed. 503 (1941).

7. See United States v. Apuzzo, 245 F.2d 416 (2d Cir.), cert. denied, 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43 (1957). Cf. Michelson v. United States, 335 U.S. 469, 475 n. 7, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

ernment's direct case.[8] If the jury were to request the indictment during its deliberations, these allegations would have to be excised—certainly if he did not take the stand.[9] It is no answer, as the Government suggests, that the matter be left to the trial judge "and should he decide at the conclusion of the trial that these allegations should not be submitted to the jury, they may then be blocked out." While it is true that surplusage in an indictment may be disregarded,[10] the inclusion of the questioned allegations serves no purpose other than possible prejudice to the defendants.[11] An indictment should contain a "plain, concise and definite written statement of the essential facts constituting the offense charged."[12] Since the defendant's conviction, sentence and appeal in the earlier case are not essential facts of the crime charged in the current indictment and prejudice may inhere in the allegations, the motion under Rule 7(d) to strike paragraphs 3H, 3I, 3J and 3K from the indictment is granted.

## II. MOTIONS FOR A SEPA RATE TRIAL

The defendants Verra move pursuant to Rule 14 of the Federal Rules of Criminal Procedure to sever the trial of Fred Ponder on two perjury counts from the trial of the conspiracy count. Counts 5 and 6 charge that Ponder committed perjury before a grand jury on two separate occasions. He is also charged in count 1 with conspiracy to obstruct justice, along with the defendants Verra and John Doe, an unknown Negro male. The movants claim that a joint trial of

Ponder on the perjury counts wherein he is the sole defendant with the conspiracy count wherein he and they are defendants would inject extraneous and confusing issues into the trial to their great prejudice.

The perjury counts center about testimony given by Ponder before a grand jury on December 13th and December 15th, 1961, some six weeks after the conclusion of the trial. This grand jury, according to the indictment, was then engaged in an investigation of violations of the obstruction of justice and conspiracy statutes by John Verra and others. The matters as to which Ponder was questioned before the grand jury and upon which the perjury counts rest are directly related to matters which are also the subject of the conspiracy count. Thus, the conspiracy count alleges that to carry out the conspiracy, Ponder, at John Verra's direction, did attempt to locate the various witnesses who had testified during the trial; the charge in the first perjury count is that Ponder perjuriously denied to the grand jury that he knew John Verra. Overt act 3 of the conspiracy count alleges that Ponder was in the Market Diner near Pier 28, New York City; the second perjury count charges that Ponder, in his second appearance before the grand jury, perjuriously testified that he had never been in or near the Market Diner and did not know its location.

▮ Where there are common elements of proof in the joined offenses,[13] the public interest in avoiding duplicitous, time-consuming and expensive tri-

8. United States v. James, 208 F.2d 124 (2d Cir. 1953); United States v. Modern Reed & Rattan Co., 159 F.2d 656 (2d Cir. 1947).

9. Cf. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) (Per Curiam).

10. Gambill v. United States, 276 F.2d 180 (6th Cir. 1960); United States v. Steiner Plastic Mfg. Co., 231 F.2d 149, 152 (2d Cir. 1956).

11. Cf. United States v. New York Great Atlantic & Pacific Tea Co., 137 F.2d 459,

462 (5th Cir.), cert. denied, 320 U.S. 783, 64 S.Ct. 191, 88 L.Ed. 471 (1943); United States v. Bonanno, 177 F.Supp. 106, 116 (S.D.N.Y.1959); United States v. B. Goedde & Co., 40 F.Supp. 523, 529 (E.D.Ill.1941).

12. Fed.R.Crim.P. 7(c).

13. United States v. Gottfried, 165 F.2d 360, 363 (2d Cir.), cert. denied, 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139 (1948); United States v. Bonanno, 177 F.Supp. 106, 118 (S.D.N.Y.1959).

als must be weighed against the prejudice which the defendants envision.[14] Here it is clear that, should separate trials of the conspiracy and perjury counts be ordered, the Government's efforts would be duplicated and without benefit to the movants. If a separate trial were ordered on the conspiracy count, the Government would be required to prove both Ponder's attempt to locate witnesses at John Verra's behest and, as alleged in overt act 3, that Ponder had been in the Market Diner on or about October 25, 1961; this same evidence would necessarily be offered to establish the falsity as charged in the two perjury counts were they to be tried separately. The defendants Verra, on the other hand, cannot keep from the jury the evidence of Ponder's alleged falsehoods merely by a separate trial of the conspiracy charge. The Government still would be entitled in its direct case to offer, as evidence of consciousness of guilt, exculpatory statements by Ponder, claimed to be false, such as his denial that he knew the defendant John Verra or the location of the Market Diner;[15] these necessarily would embrace the very matters upon which the perjury counts are based.[16] The evidence would be competent and admissible against Ponder with an appropriate admonitory instruction to the jury protecting the rights of the Verras as codefendants.[17] It is apparent, then, that the movants seek to put the Government twice to its proof without showing that they will be in any better position with separate trials of the counts of the indictment. Of course, if the trial court should be of the view that admonitory instructions will not adequately safeguard the right of the Verras to a fair trial on the conspiracy charge, they are not without a remedy.[18]

The motions for a severance are denied.

## III. MOTION BY THE DEFENDANT ANTHONY VERRA THAT HE BE PROCEEDED AGAINST AS A JUVENILE DELINQUENT

■ The defendant Anthony Verra seeks an order of severance so that he can be proceeded against as a juvenile delinquent pursuant to section 5032 of Title 18. However, under this section, which requires the juvenile's consent to such proceeding, the ultimate decision as to whether the Government will forego prosecution under the general criminal statutes rests in the sole discretion of the Attorney General. The Assistant Attorney General, who is authorized [19] to exercise the Attorney General's discretion, has directed that this defendant be prosecuted under regular adult criminal procedures. The Court is without power to interfere with or overrule the exercise of this discretion.

Accordingly, this motion is denied.

## IV. MOTION FOR PHYSICAL EXAMINATION OF A WITNESS

■ The defendants move for an order directing a physical examination of Prentiss James, the alleged assaultee, a prospective witness upon the trial. Assuming the power of the Court to make such a direction, it does not appear that an examination at this time, more than fifteen months after the alleged assault, would serve any purpose as far as the defense is concerned. The nature and extent of injuries, if any, sustained by Prentiss are not material. It is the fact of injury that is of consequence.

This motion is denied.

14. See Cataneo v. United States, 167 F. 2d 820, 823 (4th Cir. 1948).

15. United States v. Smolin, 182 F.2d 782, 785–786 (2d. Cir. 1950).

16. Cf. United States v. Kelley, 105 F.2d 912, 916–917 (2d. Cir. 1939).

17. Delli Paoli v. United States, 352 U.S. 232, 239, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957).

18. United States v. Kahaner, 203 F.Supp. 78, S.D.N.Y.

19. Order No. 211–60, 25 Fed.Reg. 8967, 8969 (1960).

## V. MOTION FOR A BILL OF PARTICULARS

In addition to the particulars as consented to by the Government, item B(i) is granted. Except as so consented to and granted by the Court, the balance of the motion for a bill of particulars is denied.

As to some matters, the defendants request particulars of the legal theory upon which the Government seeks to hold defendants to criminal responsibility and of matters of evidence. The defendants are not entitled thereto.[20]

20. Cf. United States v. Tolub, 187 F.Supp. 705, 710 (S.D.N.Y.1960).