UNITED STATES of America, Plaintiff-Appellee,

v.

Boyce MITCHELL, Defendant-Appellant.

No. 74–1546.

United States Court of Appeals, Sixth Circuit.

April 4, 1975.

---

1. See 12 Wright & Miller, Federal Practice and Procedure § 2983, at 22–24.

Albert C. Harvey, Memphis, Tenn. (Court-appointed), for defendant-appellant.

Thomas F. Turley, Jr., U. S. Atty., Larry E. Parrish, Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee.

Before WEICK, EDWARDS and PECK, Circuit Judges.

PECK, Circuit Judge.

Defendant-appellant ("appellant") was convicted at a jury trial in district court of violating 18 U.S.C. § 1503 (1970) [1] by endeavoring to influence, intimidate, or impede Robert Thurston Davis, a witness in certain then pending criminal prosecutions against appellant. See United States v. Franks, 511 F.2d 25 (6th Cir. 1975).

Very briefly, the evidence tended to show that appellant and J. D. Webster, who also was indicted in one of the indictments pending against appellant, had several times discussed killing Davis, and that Webster, by then turned government informant, at his last meeting with appellant handed over to appellant $1,000 in "expense money" to locate Davis. Federal agents, who had been electronically monitoring and recording appellant's conversation with Webster, arrested appellant and Webster shortly after the handing over of the money.

Eight of appellant's twelve claims on the instant appeal of his conviction for obstruction of justice merit discussion.[2] No claim, however, requires reversal of the conviction.

First, appellant claims that the district judge erroneously precluded him from relying on the defense of entrapment. Appellant argues that his admission of the government's proof of his conversations with and receipt of money from Webster allows him to rely on entrapment even though he refused to admit his guilt of obstructing justice. This argument is based on his contention that whether such conversations and receipt establish obstruction of justice is a question for the jury. Defense counsel agreed with the district judge's observa-

1. "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States . . . in the discharge of his duty, or injures any . . . witness in his person . . . on account of his testifying or having testified in any matter pending therein, . . or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. *Franks, supra,* disposes of four assigned errors. *Franks* establishes, *inter alia,* the propriety of the district judge's refusal to recuse himself, ordering a voice exemplar, admitting a recording of a conversation between appellant and an informant who had consented to recording the conversation, and rejecting the attempt to subject jurors of an earlier criminal trial to "fishing expedition" questioning.

tions that the jury could find "several possibilities" from appellant's admission, including

> "that [appellant] was there, but that [Webster] talked him into taking the money, but [appellant] never took it with the idea of killing anybody; that he might have been using it to investigate the case, or . . . to take the money and run off with it." Trial Transcript 384.

Under these circumstances the district judge properly precluded appellant from relying on the defense of entrapment. Such a defense "admits all elements of the offense," United States v. Lamonge, 458 F.2d 197, 201 (6th Cir.), cert. denied, 409 U.S. 863, 93 S.Ct. 153, 34 L.Ed.2d 110 (1972), and appellant's reliance on it would be "unusual . .. . in that he [would claim] he was entrapped into violating a law, that he also [would claim] he did not violate in the first place." United States v. Posey, 501 F.2d 998, 1002 (6th Cir. 1974). Of the numerous cases posing the permissibility of relying on entrapment in similar circumstances (see generally Annot., Availability of defense of entrapment where accused denied participating at all in offense, 61 A.L.R.2d 677 (1958)), United States v. Barrios, 457 F.2d 680 (9th Cir. 1972), is the closest to being in point.

> "[T]he admission of defendant that he possessed the [opium], coupled with his vehement denial of any knowledge regarding its nature or illegal origin, [does not] amount to such an admission as to entitle him to raise the entrapment defense." 457 F.2d at 682.

■ Second, appellant claims that the district court improperly permitted the prosecutor, in cross-examining appellant, to ask him whether he had made certain statements based upon the prosecutor's interpretation of the often inaudible tape recordings. Appellant argues that the prosecutor, by being permitted to draw his conclusions concerning what was said on recordings, invaded the jury's province. Appellant's argument, however, fails. The jury was aware of appellant's contention that "the words that are be-

ing used are [the prosecutor's] and not coming off the tape," and could properly weigh the discrepancies, if any, between what it concluded and what the prosecutor claimed was recorded, since it had heard the recordings during cross-examination and, in the course of its deliberations, could send for the recordings. Trial Transcript 355, 445. See United States v. Lawson, 347 F.Supp. 144, 149 (E.D.Pa.1972). Moreover, Webster's and the monitoring federal agents' recollection of the taped conversations, as well as the recordings themselves, underlay much of the cross-examination. See United States v. Avila, 443 F.2d 792, 796 (5th Cir.), cert. denied, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258 (1971); United States v. Maxwell, 383 F.2d 437, 443 (2d Cir. 1967), cert. denied, 389 U.S. 1043, 1057, 88 S.Ct. 786, 19 L.Ed.2d 835 (1968); Monroe v. United States, 98 U.S.App. D.C. 228, 234 F.2d 49, 55, cert. denied, 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956); United States . v. Enten, 329 F.Supp. 307 (D.D.C.1971). Additionally, appellant admitted that much of what the prosecutor claimed was said was, in fact, said. Where appellant denied the prosecutor's version, he did so effectively, emphasizing to the jury that the prosecutor's version certainly was far from being the only permissible version.

■ Third, appellant claims that he never violated section 1503 because the federal agents arrested him as soon as Webster handed over the $1,000 and prior to "doing anything to the witness." Yet, as the Supreme Court has recognized, section 1503

> " . . . makes an offense of any proscribed 'endeavor.' . . . '[B]y using [the word "endeavor"] the section got rid of the technicalities which might be urged as besetting the word "attempt," and it describes any effort or essay to do or accomplish the evil purpose that the section was enacted to prevent. . . . [The section] is not directed at success in corrupting a juror, but at the "endeavor" to do so.'" Osborn v. United States, 385 U.S. 323, 333, 87 S.Ct. 429, 435, 17

L.Ed.2d 394 (1966), aff'g 350 F.2d 497 (6th Cir 1965), quoting, United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 65 L.Ed. 553 (1921).

Consequently, had the jury accepted the government's evidence, as it could properly do, United States v. Hoffa, 349 F.2d 20, 45 (6th Cir. 1965), aff'd, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), there would be sufficient evidence supporting a section 1503 conviction. See *Osborn, supra* (evidence that defendant told a third party to bribe a juror held sufficient even though third party neither approached nor ever intended. to approach the juror); Hicks v. United States, 173 F.2d 570 (4th Cir.), cert. denied, 337 U.S. 945, 69 S.Ct. 1503, 93 L.Ed. 1748 (1949) (evidence that defendant asked a third party to arrange a meeting with a juror where defendant would attempt to persuade the juror to hang the jury held sufficient).

■■ · Appellant also claims that the *district judge erred in admitting into evidence* the indictments pending against appellant at the time of the purported endeavor to obstruct justice, his conviction on one of those indictments, and testimony that he had sold Webster certain firearms. Evidence of the pending indictments was proper as a "necessary ingredient in explaining the crime in question," United States v. Brown, 456 F.2d 569, 571 n. 4 (3rd Cir. 1971), cert. denied, 408 U.S. 923, 92 S.Ct. 2492, 33 L.Ed.2d 334 (1972), or as establishing motive, see Manning v. Rose, 507 F.2d 889 (6th Cir. 1974). Even had the admission of the indictments been improper, this would have been harmless error because appellant's credibility was properly impeached by a prior conviction on one of those indictments, United States v. Kemper, 503 F.2d 327, 330 (6th Cir. 1974), and because the district judge defined to the jury an indictment as "only a means by which the defendants are brought before the . court    .    .    .

[and] not evidence." Trial Transcript 444.

■ Even if evidence of a conviction of the charge underlying an alleged obstruction of justice was inadmissible at a trial on a charge of obstructing justice, see United States v. Verra, 203 F.Supp. 87 (S.D.N.Y.1962), such evidence is admissible with instructions limiting its use for impeachment purposes [3] where, as here, the convicted person testifies at the trial for · obstructing justice. That such conviction was, at the time of its use for impeachment, on appeal is immaterial. United States v. Franicevich, 471 F.2d 427, 429 (5th Cir. 1973); United States v. Owens, 271 F.2d 425 (2d Cir. 1959), cert. denied, 365 U.S. 874, 81 S.Ct. 910, 5 L.Ed.2d 863 (1961).

■ The district judge properly admitted testimony that appellant had sold Webster certain firearms "as relevant evidence of appellant['s] ability and intent to commit the offenses charged," United States v. Craft, 407 F.2d 1065, 1069 (6th Cir. 1969), Banning v. United States, 130 F.2d 330, 336 (6th Cir. 1942), cert. denied, 317 U.S. 695, 63 S.Ct. 434, 87 L.Ed. 556 (1943), particularly since appellant claimed that much of his conversations with Webster concerning the "elimination" of Davis "was just bull, just conversation." Moreover, even if such testimony was improper, appellant's volunteered statement that he "carr[ied a pistol] at all times" would make such error harmless.

■ Finally, without citing authority, appellant claims that the district judge abused his discretion in permitting certain corroborative testimony and cross-examination. We disagree. Once defense counsel implicitly attacked the credibility of the government's key witness, Webster, by eliciting that he had not yet been sentenced on his guilty plea, it was not an abuse of discretion for the district judge to permit the government to elicit from Webster's at-

---

**3.** "Members of the jury, there has been some evidence introduced here to the effect that Mr. Mitchell, the defendant, has been convicted of a prior felony case. And the Court charges you that that can be considered by you only for the purpose of weighing his credibility as a witness in his own behalf, and that conviction is of no evidence whatsoever that he is guilty or committed the crime with which he was charged in this indictment."

torney that Webster had received no promises for his testimony. United States v. Hoffa, 349 F.2d 20, 40–41 (6th Cir. 1965), aff'd, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); United States v. Attaway, 449 F.2d 309, 311 (5th Cir. 1971). Moreover, defense counsel failed to object to such questioning. Likewise, the district judge was within his discretion in permitting the government to cross-examine appellant concerning his blanket denial of wrongdoing[4] by probing the extent of his understanding of such denial.[5] See United States v. Jackson, 344 F.2d 922 (6th Cir.), cert. denied, 382 U.S. 880, 86 S.Ct. 169, 15 L.Ed.2d 120 (1965); Hug v. United States, 329 F.2d 475, 484 (6th Cir.), cert. denied, 379 U.S. 818, 85 S.Ct. 37, 13 L.Ed.2d 30 (1964).

Affirmed.

4. "[APPELLANT'S ATTORNEY:] I want to ask you whether or not on August 15th or any other time did you corruptly endeavor to obstruct and impede the due administration of justice in the United States District Court for the Western District of Tennessee? Did you do that? Did you commit the act for which you are charged?

   "[APPELLANT:] No sir."
Trial Transcript 254.

5. "Q. What does corrupt mean?

   "A. I guess you overact and go out and try to do something, where your intentions are to do something . . . ..

·"Q. What does endeavor mean?

   "A. I don't have no education, Mr. Parrish. I am not really sure what it means.

   "Q. How do you obstruct something? What does that mean?

   "A. I am not right sure what you mean by that question.

   "Q. You don't know what the word obstruct means?

   "A. Well, to build something, to obstruct a building.

   "Q. How do you impede? What does impede mean?

   "A. I am not sure what it means."
Trial Transcript 275, 277.